**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

00 MAR -3 PH 1:38

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PATRICIA RENNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-98-S-3171-NE |
| | ) |
| BIONETICS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**ENTERED**

MAR - 3 2000

### MEMORANDUM OPINION

This action is before the court on three motions filed by defendant, Bionetics Corporation: a motion for summary judgment (Doc. No. 10); a motion to strike the affidavit of plaintiff Patricia Renner (Doc. No. 18); and a motion to file a reply brief in support of summary judgment (Doc. No. 22). Defendant's motion to file a reply brief is due to be granted. Its motion to strike plaintiff's affidavit is due to be granted in part and denied in part. More specifically, paragraphs two and three of the affidavit, along with the accompanying exhibit, are due to be stricken. The court will not consider that evidence in ruling on defendant's motion for summary judgment, to which it now turns.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence*

2

v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.          ‾

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission

3

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTUAL BACKGROUND

Plaintiff, Patricia Renner, began working for MSI, a division of defendant, Bionetics Corporation, in 1989. MSI provided maintenance support to the George C. Marshall Space Flight Center ("Marshall") of the National Aeronautics and Space Administration ("NASA") in Huntsville, Alabama. Renner was initially employed as a secretary to George Fehar, Vice President of MSI. She was promoted to the position of procurement department supply clerk a few years later, which required her to assist in managing Bionetics' inventory at Marshall. After more than a year in that position, Renner was reclassified as an item manager. Her duties were identical to those of supply clerk. Renner eventually was promoted to the position of buyer in 1994. In that capacity, she purchased inventory items for the performance of MSI's responsibilities under its contract with Marshall. When doing so, she was required to apply NASA's procurement regulations.

4

Renner applied for an open position of lead supply technician in 1994.[1] She was 51 years old at the time. When passed over for the job, Renner filed a charge of age discrimination with the EEOC.[2] Bionetics and Renner settled that claim in May of 1996, without suit being filed.[3]

A year later, in May of 1997, Marshall modified its contract with Bionetics to include Flight Hardware Support as an additional function. Bionetics thereafter created the position of Subcontract Specialist, to aid in the administration of Flight Hardware Support services. Bionetics sought to fill that position with an individual possessing both experience in the use of NASA procurement regulations and a working, technical knowledge of electronic parts and engineering materials.[4]

Plaintiff applied for the position in June of 1997. Two of her former supervisors, William Ellett and James Craig, concluded she was qualified to hold such a position.[5] Janet Land, who then

---

[1] *See* Deposition of Patricia Renner, attached as Exhibit "D" to plaintiff's evidentiary submission in opposition to summary judgment (Doc. No. 14), at 49. Earlier in 1994, plaintiff had temporarily assumed the position of lead supply technician for a period of six weeks, while the permanent employee underwent, and recovered from, surgery. *See id.* at 45-48.

[2] *See id.* at 49-50 and Exhibit "8" to plaintiff's deposition.

[3] *See id.* at 170 and Exhibit "8" to plaintiff's deposition.

[4] *See* Job description included as Exhibit "1" to deposition of John Salisbury, attached as Exhibit "E" to plaintiff's evidentiary submission in opposition to summary judgment.

[5] *See* Affidavit of William Ellet, attached as Exhibit "B" to plaintiff's

5

was employed by one of Bionetics' subcontractors, New Technology, Inc., also applied.  Land was 41 years old at the time.  Land specialized in the area of equipment repair and maintenance, but also had some procurement experience.[6]  Renner admitted in deposition that, while she possessed more procurement experience than Land, Land had a more developed technical background.[7]

John Salisbury, one of defendant's department managers, interviewed Renner and Land.[8]  While Salisbury conducted the interviews and made staffing recommendations, he did not have final approval authority.[9]  That authority rested with Kenneth Carrington, one of defendant's project managers.[10]  Plaintiff stated in deposition that her interview with Salisbury did not go well.

> Q.   Tell me what you remember about the interview with Mr. Salisbury.
>
> A.   Well, when I went in, usually, when you go in for an interview, they start telling you the positive things about the job.  And as soon as I went in there, all I got was negative stuff about the job.  I was going

---

evidentiary submission in opposition to summary judgment, at ¶ 3, and, Affidavit of James Craig, attached as Exhibit "C" to plaintiff's evidentiary submission in opposition to summary judgment, at ¶ 3.

[6] *See* Job application and resume of Janet Land, attached as Exhibit "I" to defendant's evidentiary submission in support of summary judgment (Doc. No. 12).

[7] *See* Renner depo. at 106-07.

[8] *See* id. at 75; Salisbury depo. at 66.

[9] *See* Salisbury depo. at 32.

[10] *See* id.; Affidavit of Kenneth Carrington, attached as Exhibit "D" to defendant's evidentiary submission in support of summary judgment, at ¶ 3.

6

to have to -- Did I know there was going to be a lot of
overtime, that there was going to be some traveling.
      And I told him I didn't have any problem with that,
that I was divorced, that I had been married for 32
years, I didn't have anybody to worry about at home. And
he started saying, "Well, you're about the same age as my
mother."    And then he was talking about her being
divorced. [11]

Salisbury denies he made any statement comparing plaintiff's age to

that of his mother.[12]   Further, he claims that he asked both Renner

and Land the same series of questions.[13]   Renner, on the other hand,

asserts that while Salisbury asked her to explain how certain

electronic components worked, he only asked Land whether she knew

what certain electronic components were.[14]

      Salisbury ultimately recommended that Land be hired to fill

the Subcontract Specialist position, citing her superior technical

knowledge and experience.    Salisbury's deposition testimony

reflects his judgment that a strong technical background was more

important to successful performance of the position than a strong

procurement background.

      Q.   Well, I mean was there anything else about

---

[11] Renner depo. at 75-76 (emphasis supplied).

[12] See Salisbury depo. at 151.

[13] See id. at 78-80, 97-98.

[14] Compare Renner depo. at 76-77, with Land depo. at 28-29, 32-35.  The
court notes marginally, however, that there may be no substantive difference in
the questions asked each applicant; that is, when explaining "what certain
electric components were," a competent person necessarily would include a
description of each component's function(s) and, thereby, how it "worked."

7

[Land's] technical background that you thought was important in recommending her to Mr. Carrington other than what you've already told me about?

A.   No, sir.

Q.   Did you talk to Mr. Carrington about your feeling that technical experience was more important than procurement background?

A.   Yes, sir.

Q.   What did he say?

A.   He felt like that based on the requirements and our need to gain the customer's confidence, he agreed with me.

Q.   He did?

A.   And we had people to support the procurement function across the board, felt like it was easy to get anybody doing that job in line with -- if they didn't already know the procedures, to train them on the procedures and have them follow up. It's more difficult to teach a technical, you know, a technical attitude and background.  But based on the timeframe that we had to start the project. [15]

Carrington eventually approved Land for the Subcontract Specialist position, despite the company's policy of promoting employees from within.  Salisbury recalled that it took Land approximately four months to learn the requisite procurement policies, so that "she could do her job on a regular and consistent basis without needing help from somebody else."[16]  Renner actually

---

[15] Salisbury depo. at 93-94.

[16] Id. at 87-88.

8

helped train Land in procurement procedures.[17]

Renner wrote a letter to the EEOC on July 28, 1997, alleging
that Bionetics' failure to promote her to the position of
Subcontract Specialist was in retaliation for her prior filing of
an age discrimination charge in 1994.[18] That letter did not contain
a separate claim of age discrimination; rather it focused solely on
defendant's alleged unlawful retaliation:

> When I left the interview I felt like he [Salisbury] all
> ready [sic] had the position filled and he knew that I
> was more than qualified to do the job. He never got back
> with me to see if I was still interested in the position.
>
> It looks like MSI has done it again. I feel like this
> time it was done because of the Age Discrimination suit
> against them in October of 1995. They let me think I had
> a chance and then they gave it to someone outside the
> company. I think they want me to get mad and quit.[[19]]

Renner concedes that Carrington, the ultimate decisionmaker,
had no knowledge of her previous age discrimination claim.[20] She
asserts instead that Salisbury knew of the 1994 claim, and held it
against her during the hiring process.[21] More specifically, she
claims that Land told her Salisbury was aware of the prior claim at

---

[17] See id. at 84-85.

[18] See Exhibit "F" to defendant's evidentiary submission in support of
summary judgment.

[19] Id.

[20] See Plaintiff's brief in opposition to summary judgment (Doc. No. 16),
at 4.

[21] See id.

9

the time he interviewed and made a recommendation for the

Subcontract Specialist position.

Q.   Do you know of any reason that Mr. Salisbury
had to dislike you or not get along with you?

A.   Oh, yes, sir. It's over this -- I believe it's
over the lawsuit. He doesn't want me over there because
he figures that I would be trouble.   And I'm not a
troublemaker.  I just stood up for what was right.  And-

Q.   And by "the lawsuit," you're talking about the
claim you had made back in 1994?

A.   Yes, sir.

Q.   Okay.  What evidence, if any, do you have that
Mr. Salisbury knew that you had made an age
discrimination against the company?

A.   Well, I've been told by several people, and by
Ms. Land herself told me.  I said, "Does John know that"
-- See, I've known Ms. Land several years prior to her
getting the job.  And she said, "Hell, yeah, he knew."

Q.   Those were her words?

A.   Yes, "Hell, yes, he knew."[22]

Renner did not elaborate further on this alleged statement in

deposition.  She did not pinpoint when the comment was made, or

under what circumstances it was made.  Land, while personally aware

that Renner had filed a prior age discrimination claim against the

MSI division of Bionetics, did not recall making such a statement.

Q.   At that time were you aware that Pat Renner had

----

[22] Renner depo. at 83-84 (emphasis supplied).

10

previously filed an EEOC charge regarding an age
discrimination claim?

    A.   Yes.

    Q.   How did you hear about that?

    A.   Through the grapevine.

    Q.   Did you ever talk with Mr. Salisbury about
that?

    A.   No.

. . .

    Q.   Okay.  As you sit here today, do you know
whether or not Mr. Salisbury was aware of Ms. Renner's
first EEOC charge at the time of your interview for the
job?

    A.   No.

    Q.   You don't know anything about that?

    A.   No, I'm not aware of it.

    Q.   Did you not tell Ms. Renner that he was in fact
aware of it?

    A.   I don't remember if I did or not.

    Q.   I mean, did you not tell Pat Renner that Mr.
Salisbury was aware of her first EEOC charge at the time
he hired you?

    A.   I don't remember telling her that, if I
had. [23]

In deposition, Salisbury repeatedly denied any knowledge of

---

[23] Land depo. at 27-28.

11

Renner's prior EEOC claim at the time he interviewed her.

    Q.  Was your decision to hire Janet Land and not
promote Ms. Renner for the subcontract specialist
position based in any way on the fact that Ms. Renner
back in 1994 had filed an EEOC charge against MSI?

    A.  Absolutely not. I had no knowledge of it.

    Q.  Okay. When you conducted the interviews for
this position in July 1997, you were unaware that Ms.
Renner had even made an EEOC charge previously?

    A.  I never knew it. That -- Can I say something?

    Q.  Yes.

    A.  That type of thing -- I work outside of that
building, and I mean, I never heard that.[24]

In his statement to the EEOC, Salisbury reiterated that Renner's

prior age discrimination claim had no bearing on his decisionmaking

process: "At the time, I did not even know that Ms. Renner had

filed some sort of suit against Bionetics, much less that there had

been a settlement — so that did not enter into my decision at

all."[25]

    Renner filed the present action with this court on December

22, 1998, contending not only that Bionetics was liable for

unlawful retaliation, but also that it had unlawfully discriminated

against her on the basis of age when failing to promote her to

---

[24] Salisbury depo. at 151-52.

[25] Exhibit "G" to defendant's evidentiary submission in support of summary
judgment.

12

Subcontract Specialist.[26]

### III. DISCUSSION

Bionetics argues that Renner's claims of unlawful retaliation

and discrimination under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 et seq., should be summarily dismissed.

The court addresses the viability of those claims in turn.

### A.   Retaliation

The ADEA's anti-retaliation provision is located at 29 U.S.C.

§ 623(d), providing in pertinent part that:

> It shall be unlawful for an employer to discriminate
> against any of his employees or applicants for
> employment, ... because such individual ... has opposed
> any practice made unlawful by this section, or because
> such individual ... has made a charge, testified,
> assisted, or participated in any manner in an
> investigation, proceeding, or litigation under this
> chapter.

To establish a *prima facie* case of retaliation under the

participation clause of that section, a plaintiff must show: (1)

statutorily protected activity; (2) an adverse employment action;

and (3) a causal linkage between the protected conduct and the

adverse action. See *Hairston v. Gainesville Sun Publishing*

*Company,* 9 F.3d 913, 919 (11th Cir. 1993) (noting that ADEA

retaliation cases are analyzed in the same manner as Title VII

---

[26] *See* Complaint (Doc. No. 1) ¶¶ 8, 11.

13

retaliation cases). If a plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Id.* (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)). Should defendant produce such reasons, "the burden then shifts back to [plaintiff] to raise a genuine factual question as to whether [defendant's] stated reason is mere pretext." *Hairston,* 9 F.3d at 920.

Bionetics acknowledges that Renner satisfies the first two prongs of her *prima facie* ease. Her filing of a charge of age discrimination with the EEOC in 1994 constitutes statutorily protected activity, and Bionetics' decision not to promote Renner to Subcontract Specialist must be considered an adverse employment action. Bionetics argues instead that no causal connection exists between the two events.

Bionetics first focuses on Renner's concession that the ultimate decisionmaker, Carrington, had no knowledge of her prior EEOC charge. It further contends that Renner has failed to adduce sufficient evidence indicating that Salisbury knew of the prior EEOC charge. Bionetics relies on the deposition testimony of Salisbury and Land on this issue. It also argues that Land's

14

statement to Renner, recalled by her in deposition, regarding Salisbury's alleged knowledge of the charge ("Hell, yeah, he knew"), is inadmissible.[27]     Alternatively, even if Renner establishes Salisbury's knowledge of her prior EEOC claim, Bionetics contends that too much time had elapsed between the filing of her original EEOC charge in 1994, and the 1997 decision not to promote, to infer a causal connection. It relies on the Eleventh Circuit's recent opinion in *Maniccia v. Brown*, 171 F.3d 1364 (11th Cir. 1999), as support for that proposition.

Renner counters by arguing that her recollection of Land's statement regarding the state of Salisbury's knowledge is an admission under Federal Rule of Evidence 801(d)(2)(D), not inadmissible hearsay. She also contends that Bionetics' reliance on the temporal distance between her original EEOC charge and Salisbury's decision not to recommend her for promotion is disingenuous, because Salisbury had no previous occasion to retaliate. She essentially argues that Salisbury retaliated at his first opportunity.

---

[27] Implicitly, Bionetics recognizes that unlawful conduct by Salisbury may render it liable, even though he was not the final decisionmaker. Salisbury's significant role in the hiring process, in terms of conducting interviews and making recommendations, confirms this point.   See generally *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999); *Olmsted v. Taco Bell Corporation*, 141 F.3d 1457, 1461 (11th Cir. 1998); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1565 (11th Cir. 1987).

15

### 1.   The admissibility of Renner's deposition testimony

In ruling on summary judgment, this court must consider only evidence that may be reduced to admissible form at trial.   *See* *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

Land's statement to Renner ("Hell, yeah, he knew") merely is her conclusory expression of an opinion about the extent of Salisbury's knowledge of Renner's original EEOC charge.   The statement fails to reiterate any specific words spoken by Salibury to Land.   Further, it does not reveal whether Land's opinion was based upon statements made to her by Salisbury, or simply was surmise on her part.   For all that is shown in this record, Land's opinion simply is "in the air," and could be nothing but pure conjecture, unrelated to a specific statement made by Salisbury to her.

The only way Land's statement to Renner could be properly admitted into evidence at trial would be for the purpose of impeachment.   If, as in deposition, Land continues to deny making such a statement, Renner could introduce the statement to impugn Land's credibility.   Assuming the statement is admissible for that limited purpose, it still would have no substantive value or use, and the court would have to so instruct the jury.   The jury could not take such a statement by Land into account when determining

16

whether Salisbury knew of Renner's prior age discrimination charge.
Simply put, this out-of-court statement suffers from a fatal lack
of foundation. Accordingly, it cannot be used at trial, or by this
court in ruling on summary judgment, to establish the state of mind
of a third person, Salisbury.[28]

In sum, the lone statement of opinion ("Hell, yeah, he knew"),
denied by both the original and intermediate declarants, would not
be admissible at trial for substantive purposes. Further, because
Renner has failed to show that either Carrington or Salisbury had
knowledge of her prior EEOC charge on the date the decision not to
promote was made, she cannot establish the requisite causal

---

[28] The parties spent a great deal of time in brief discussing the
admissibility of Land's statement to Renner under Federal Rule of Evidence
801(d)(2)(D). Defendant also has the better end of that argument.

Federal Rule of Evidence 801(d)(2)(D) provides in relevant part that "[a]
statement is not hearsay if [it is] ... a statement by the party's agent or
servant concerning a matter within the scope of the agency or employment, made
during the existence of the relationship." Further, the contents of such a
statement are not "alone sufficient to establish ... the agency or employment
relationship and scope thereof ...." Fed. R. Evid. 801(d)(2). To establish the
admissibility of such a statement, three things must be shown: (1) an agency or
employment relationship existed between the declarant and the party; (2) the
statement was made while the agency or employment relationship continued; and (3)
the statement relates to a matter within the scope of the agency or employment.
See Joseph M. McLaughlin, Weinstein's Federal Evidence § 801.23[1], at 801-54 to
801-56 (2d ed. 1999).

Renner has not made the requisite showing to bring Land's alleged statement
within Rule 801(d)(2)(D). She does not set forth in deposition, affidavit, or
brief when Land's statement was made. No evidence indicates Land was an agent
of Bionetics at the time she informed Renner of Salisbury's alleged knowledge of
the prior age discrimination charge. Further, the evidence does not compel the
conclusion that such a statement was within the scope of Land's employment.
Given these points, plaintiff has not reduced Land's hearsay statement to
admissible form.

17

connection in support of a *prima facie* case of retaliation. *See
Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1355-56
(reversing trial court's decision not to grant judgment as a matter
of law on retaliation claim, because plaintiff "failed to present
sufficient evidence that [defendant's agent] was aware of her
protected conduct").

    **2.    Temporal proximity and the showing of a causal connection**

Additionally, this court finds that too much time had elapsed
between Renner's initial filing of an EEOC charge in 1994, and
Bionetics' decision not to promote her in 1997, to circumstantially
establish a causal connection on the basis of temporal proximity.
While the Eleventh Circuit has long stated that a causal connection
is established so long as the statutorily protected activity and
the adverse employment action are "not wholly unrelated," *see
Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993),
it more recently noted that the lack of temporal proximity between
those events works against a showing of causation. *Maniccia v.
Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999) ("The more than 15-
month period that elapsed between Appellant's grievance and the
alleged adverse employment actions belies her assertion that the
former caused the latter."). This court follows that recent

18

precedent today, and finds that plaintiff has failed to demonstrate a proper causal connection.

Without a showing of cause, defendant's motion for summary judgment as to plaintiff's retaliation claim is due to be granted.

## B.   Age Discrimination

### 1.   Exhaustion as a threshold issue

As stated earlier, Renner's letter to the EEOC regarding Bionetics' failure to promote her focused solely on alleged unlawful retaliation. There is no mention of age discrimination in the body of that letter, other than Renner's reference to her previous, 1994 EEOC charge.  Bionetics accordingly argues this court should not address the merits of Renner's age discrimination claim, because she failed to exhaust administrative remedies. Renner counters with the arguments that her age discrimination claim not only is reasonably related to her retaliation claim, but also was expressly investigated by the EEOC representative who contacted Salisbury.

In suits under Title VII and the ADEA, a plaintiff must exhaust administrative remedies before filing suit.

> Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts.

19

*Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222

(8th Cir. 1994). *See also Kirby v. Dole*, 736 F.2d 661, 663-64

(11th Cir. 1984) (affirming trial court's conclusion that ADEA

plaintiff must exhaust administrative remedies before proceeding in

federal court). In *Griffin v. Carlin*, 755 F.2d 1516 (11th Cir.

1985), the Eleventh Circuit adopted the trial court's analysis in

construing when administrative remedies have been exhausted:

> The court noted that the requirement of exhaustion of
> administrative remedies is satisfied when the issues (a)
> are expressly raised in the pleadings before the
> administrative agency, (b) might reasonably be expected
> to be considered in a diligent investigation of those
> expressly raised issues, or (c) were in fact considered
> during the investigation.

*Id.* at 1522. Renner concedes that the age discrimination claim

alleged in her complaint was not expressly raised in her letter to

the EEOC. The court, therefore, must examine the evidence to

discern whether the second or third situations articulated in

*Griffin* are applicable here.

> a.   Should Renner's age discrimination claim have
>      reasonably been considered during investigation of
>      her retaliation claim by the EEOC?

This court finds that Renner's age discrimination claim is not

reasonably related to the retaliation claim advanced before the

EEOC. Her letter to the EEOC focuses on a very narrow issue:

20

whether defendant refused to promote her because of her previous
age discrimination charge.  Renner failed to allege any facts in
the body of her letter that raise the issue of age discrimination.
The difference in the substantive nature of claims based on the
retaliation and discrimination sections of the ADEA further support
this conclusion.  *Cf. Williams v. Hager Hinge Company*, 916 F. Supp.
1163, 1173 (M.D. Ala. 1995) (contrasting elements of age
discrimination, race discrimination, and race-based retaliation).

The fact that Renner's 1994 EEOC charge asserted that she had
been passed over for the position of lead supply technician because
of her age is not persuasive in this context.   In *Williams v.
Little Rock Municipal Water Works*, 21 F.3d 218 (8th Cir. 1994), the
plaintiff filed an EEOC charge alleging race discrimination in
connection with her denial of a promotion in 1987.  The EEOC made
a finding of "no cause" to support the allegations, and plaintiff
elected not to take further legal action.  She filed a second EEOC
charge alleging retaliation in connection with her subsequent
denial of a merit raise and promotion in 1990.  As in the action
before this court, the plaintiff in *Williams* argued that this
second denial of promotion was premised entirely on the fact that
she had filed a prior EEOC charge.  After the EEOC issued a second

21

finding of "no cause" to support the allegations, the plaintiff
filed a judicial complaint alleging both unlawful retaliation and
race discrimination. *See id.* at 221. The Eighth Circuit affirmed
the trial court's granting of summary judgment to defendant on the
race discrimination claim, based on plaintiff's failure to exhaust
administrative remedies. The *Williams* court made the following
statements that are directly applicable here:

> Williams contends that her allegations of race
> discrimination are directly related to her allegations of
> retaliation by Water Works contained in the 1990 EEOC
> charge. Williams maintains that, but for the 1987 EEOC
> charge alleging race discrimination, the 1990 EEOC charge
> of retaliation would not have been necessary. Williams
> also argues that both the race discrimination and
> retaliation charges are grounded in Water Works' failure
> to promote and award her a pay raise and, thus, the two
> charges must be construed together in assessing the
> permissible scope of her judicial complaint.

. . .

> In the present case, Williams' claims of race
> discrimination are separate and distinct from her claims
> of retaliation. Not only did Williams fail to check the
> box for race discrimination, her 1990 EEOC charge and
> supporting affidavit specifically and unambiguously
> alleged that Water Works retaliated against her because
> she had filed a charge with the EEOC in January 1987.
> The 1990 EEOC charge does not even hint of a claim of
> race discrimination. This amounts to more than a mere
> technicality and is the product of an unconstrained
> reading of Williams' charge. The only claim properly
> addressed by EEOC administrative processes was that of
> retaliation. Therefore, we hold that the district court
> did not err in granting Water Works' motion for summary

22

judgment as to Williams' Title VII race discrimination
claims.

*Id.* at 222-23.  This court finds the Eighth Circuit's rationale
persuasive, because there is no variance between the facts in
*Williams* and the circumstances surrounding Renner's second EEOC
complaint.  The mere fact that plaintiff previously had complained
of age discrimination does not, *ipso facto*, give rise to a second
age discrimination claim arising out of different conduct.  As
evidenced by Renner's first EEOC charge, she was well aware of the
facts and circumstances that must be alleged to state an age
discrimination claim.  Her failure to do so in her second charge is
significant, and must not be ignored.  This court therefore
concludes that Renner's present age discrimination claim cannot
survive on the logic that it is reasonably related to her
retaliation claim.  That is not the end of the inquiry, however.

> **b.   Was Renner's age discrimination claim in fact
> considered by the EEOC representative during
> investigation of her retaliation claim?**

Despite the court's determination that Renner's age
discrimination claim is not reasonably related to her retaliation
claim, she still can avoid dismissal if she puts on evidence
indicating that the EEOC representative actually investigated
whether Bionetics' 1997 failure to promote her was based on age.

23

The only evidence before the court on that point is Salisbury's

deposition testimony, wherein he stated that questions addressed to

him by the EEOC investigator during a telephone conversation

indicated that plaintiff had charged age discrimination, not

retaliation.

> Q.   When did you first become aware that Ms. Renner
> had filed an EEOC charge for the second time against the
> company?
>
> A.   A gentleman from EEOC called me at home.  You
> said a second time I didn't know it was a second time.
> I got a phone call from a gentleman from the EEOC at home
> several months after we started.
>
> . . .
>
> Q.   What did the fellow from the EEOC tell you?
>
> A.   Said that Pat had filed a charge against
> Bionetics during the hiring [of Land].  I think he said
> it was an age discrimination or something to that effect.
>
> Q.   He didn't tell you that she was claiming that
> the company had retaliated against her because she had
> filed an earlier charge of discrimination?
>
> A.   No, sir.
>
> Q.   He told you it was an age discrimination claim?
>
> A.   That I recall, yes, sir. [29]

Bionetics has offered no evidence to rebut plaintiff's assertion

that such was in fact considered during the investigation.

---

[29] Salisbury depo. at 38, 40 (emphasis supplied).

24

Accordingly, this court will proceed to analyze whether Renner has

stated a *prima facie* case of age discrimination.

## 2.    Burden-Shifting Framework

In the discussion that follows, this court will pretermit

consideration of the issue whether Salisbury's interview comparison

of plaintiff's age to that of his mother constitutes direct

evidence of age discrimination,[30] and focus instead upon the burden-

shifting framework originally articulated by the Supreme Court in

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct.

---

[30] The Eleventh Circuit recently analyzed the issue of direct evidence in
employment discrimination cases at great length.    *See Wright v. Southland
Corporation*, 187 F.3d 1287, 1293-1303 (11th Cir. 1999) (collecting and
summarizing cases).    The *Wright* court noted that "when a plaintiff has direct
evidence of illegal discrimination, he need not make use of the *McDonnell Douglas*
presumption, and conversely, when he does not have such direct evidence, he is
required to rely on the *McDonnell Douglas* presumption."    *Id.* at 1293.

In another recent opinion, the Eleventh Circuit defined direct evidence in
the age discrimination context as follows:

> We have defined direct evidence of discrimination as evidence which
> reflects "'a discriminatory or retaliatory attitude correlating to
> the discrimination or retaliation complained of by the employee.'"
> In other words, the evidence must indicate that the complained-of
> employment decision was *motivated* by the decision-maker's ageism.
> As a result, "only the most blatant remarks, whose intent could be
> nothing other than to discriminate on the basis of age" will
> constitute direct evidence of discrimination. An example of "direct
> evidence would be a management memorandum saying, 'Fire
> [plaintiff]—he is too old.'"

*Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir.
1999) (citations omitted) (emphasis in original).    In *Damon*, the Eleventh Circuit
treated a supervisor's statement that "'what the company needed was aggressive
*young* men like [plaintiff's replacement] to be promoted'" not as direct evidence
of age discrimination, but as highly probative circumstantial evidence.    *Id.* at
n.1.

25

1817, 36 L.Ed.2d 668 (1973). *See Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (noting that variation of *McDonnell Douglas* test for Title VII claims premised on circumstantial evidence has been adopted in ADEA cases). Under that tripartite scheme, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. If successful, the burden of production shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the challenged employment action. If that burden is met, the plaintiff must produce evidence indicating that the defendant's stated reason is mere pretext for unlawful discrimination. The plaintiff carries the ultimate burden of persuasion of showing that the defendant intentionally discriminated against her. *See Wright v. Southland Corporation*, 187 F.3d 1287, 1292 (11th Cir. 1999) ("In sum, the plaintiff in an employment discrimination lawsuit always has the burden of demonstrating that, more probably than not, the employer took an adverse employment action against him on the basis of a protected personal characteristic.").

Renner establishes a *prima facie* case of discrimination based on circumstantial evidence if she shows: (1) that she was a member of the protected group of persons between the ages of forty and

26

seventy; (2) that she was subject to an adverse employment action;
(3) that a substantially younger person filled the position she
sought; and (4) that she was qualified to perform the duties of the
job for which she was rejected. *Damon v. Fleming Supermarkets of
Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (citing
*Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428, 1432 (11th
Cir. 1998)). Bionetics acknowledges that the first three prongs of
plaintiff's *prima facie* case have been satisfied. Further, this
court concludes Renner has produced sufficient evidence to create
a genuine issue of material-fact on the issue of whether she was
qualified for the Subcontract Specialist position.

Bionetics has met its burden of articulating a legitimate,
nondiscriminatory reason for the decision to hire Land, instead of
promoting Renner: Land's more extensive technical experience. The
burden thus shifts back to plaintiff to establish that defendant's
proffered reason is a pretext for age discrimination.

In brief, defendant states that its "decision-makers concluded
that it would be easier and quicker to train Land in NASA
procurement procedures, because she already had two years of
general procurement experience, than it would be to train Ms.
Renner in the tedium of electronic component functionality and

27

specifications."[31]     The Eleventh Circuit has "repeatedly and

emphatically held that a defendant may terminate [or decline to

promote] an employee for a good or bad reason without violating

federal law." *Damon*, 196 F.3d at 1361.  Federal courts "are not in

the business of adjudging whether employment decisions are prudent

or fair."  *Id.*  Rather, their "sole concern is whether unlawful

discriminatory animus motivates a challenged employment decision."

*Id.*  As stated by the Fourth Circuit in *EEOC v. Clay Printing

Company*, 955 F.2d 936, 946 (4th Cir. 1992):

> It is not for this court or any other governmental agency
> to direct the business practices of any company.  In the
> context of this case, Clay was free to make its business
> decisions, including reorganizing its work force, so long
> as it did not violate the ADEA.  It is not the purpose of
> the EEOC nor the function of this court to second guess
> the wisdom of business decisions.

*Id.* at 946.     *Accord Carter*, 870 F.2d at 585 ("Conclusory

allegations of discrimination, without more, are not sufficient to

raise an inference of pretext or intentional discrimination where

[an employer] has offered ... extensive evidence of legitimate,

non-discriminatory reasons for its action.").

Renner admitted that her technical knowledge of electric

components paled in comparison to that of Land.  Her reliance on

---

[31] Defendant's reply brief in support of summary judgment, submitted in conjunction with its motion for leave to file a reply brief (Doc. No. 22), at 9-10.

28

defendant's policy of "promoting from within" is inapposite as
evidence of pretext, because Bionetics concluded that Land was more
qualified for the position of Subcontract Specialist than Renner.
The policy alluded to would only be relevant to this court's
analysis of pretext if Renner had adduced evidence indicating she
was equally or more qualified for the position than Land.

Nonetheless, a genuine issue of material fact exists regarding
whether Salisbury compared Renner's age to that of his mother
during the interview.  That evidence alone warrants denial of
summary judgment, because it creates a genuine issue of material
fact regarding the truth of Bionetics' non-discriminatory reason.
*See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.
1997).  Should plaintiff prove at trial that Salisbury in fact made
such a comment, a jury may reasonably "conclude that the employer's
proffered 'legitimate reasons were not what actually motivated its
conduct.'" *Id.* (quoting *Cooper-Houston v. Southern Railway Company*,
37 F.3d 603, 605 (11th Cir. 1994)).  *See also Damon*, 196 F.3d at
1362-63 (collecting authorities, and noting that "[g]iven the
substance, context, and timing of [defendant's agent's] comment, if
credited, we find it to be a significant piece of circumstantial
evidence" of pretext).

29

In sum, Renner has produced sufficient evidence to not only establish a *prima facie* case of age discrimination, but also create a genuine issue of material fact regarding the pretextual nature of Bionetics' non-discriminatory reason for not promoting her. Defendant's motion for summary judgment as to plaintiff's age discrimination claim, therefore, is due to be denied.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted in part and denied in part. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **3rd** day of March, 2000.

_____
United States District Judge

30